UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                    Chapter 11

VIPER VENTURES, LLC,                                      Case No. 8:15-bk-3404-CPM

      Debtor.

_____/

### <u>DEBTOR'S CHAPTER 11 CASE MANAGEMENT SUMMARY</u>

VIPER VENTURES, LLC (the "**Debtor**"), by and through its undersigned attorneys, pursuant to Local Rule 2081-1(b), hereby files this Chapter 11 Case Management Summary (the "**Summary**").  For its Summary, the Debtor states the following:

### Introduction

On April 1, 2015 (the "**Petition Date**"), the Debtor filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

### Case Management Items

### I.        Description of the Debtor's Business

The Debtor is a Florida limited liability company that owns 31 acres of waterfront land on Rattlesnake Point just south of Gandy Boulevard in Tampa, Florida (the "**Property**").  The Property is uniquely situated at the gateway from Pinellas County to the peninsula of South Tampa.  It is located several miles from the maritime terminals at Port Tampa, which are immediately adjacent to MacDill Air Force Base. Several luxury residential facilities, including WestShore Yacht Club and Casa Bella Apartments, are located nearby on the way to the MacDill Air Force Base.  The Newport property immediately to the north of the Property was the subject

of a highly publicized condominium and residential development plan in the years leading up to the Great Recession.  Newport has changed ownership, and the new owner is again pursuing development plans.

Currently, the Property includes a 7.5 acre tract with easy Gulf of Mexico access improved by one of the best equipped small shipyards in the southeast.  This shipyard is capable of accommodating vessels up to 200 feet and 14 foot draft for in-water repairs and up to 160 feet for projects that require hauling for more extensive work. There are over 60,000 square feet of undercover facilities, including a main construction/repair building housing six separate construction bays, a fully enclosed paint bay, and an interior refinishing booth.  Several mega yachts (of up to 147 feet) and naval ships have been constructed or repaired at this location.  This is also the former site of Misener Marine, which constructed the famous "seven-mile" bridge in the Florida Keys.  The Property is currently zoned for industrial use with a specialized CMU-35 land use designation underlying.  The Debtor has been working to modify the underlying land use to include residential usage as well and to clarify the rights of third parties to use the Property for the transmission of chemicals over the Property.

The Property was acquired by the Debtor on June 4, 2004.  Funding was provided by two loans (the "**Loans**") from Wachovia Bank, N.A., predecessor in interest to Wells Fargo Bank, N.A. (the "**Lender**"), and by investments from sixteen different individuals or entities (the "**Investors**") who hold equity positions ranging from as much as 20% to as little as 0.6%.  Each of the Investors executed documents pursuant to which they guaranteed the repayment of 175% of their share of the Loans.[1]

---

[1]  As noted below, on March 25, 2015, the Investors extended a revolving line of credit to the Debtor in the amount of $1 million to finance the filing of the chapter 11 case and the Debtor's plan of reorganization.

The Loans were modified and restated from time to time. In 2011, the parties agreed to extend the maturity date of the Loans to April 1, 2015.  The Debtor continued to make payments on the Loans, even during the nadir of the "Great Recession," until defaults by the Debtor's largest tenant, as described below, in turn resulted in defaults on the Loans.

The Debtor currently leases the Property to tenants including Cargill, Prestige Yachts, Lazarra Yacht Corp., and RiverHawk Marine, LLC. ("**RiverHawk**").  RiverHawk leases the 7.5 acre former Misener tract described above.  Unfortunately, in 2013, RiverHawk began experiencing economic problems and stopped paying its full monthly rent of $64,610.99 (plus its share of the insurance and taxes) per month.  As of the Petition Date, RiverHawk owes the Debtor approximately $1.5 million in past due rent.  In early 2014, RiverHawk began paying $25,000.00 a month in rent. In addition, RiverHawk paid $140,000.00 in late 2014 to reduce the arrearage and continues to advise the Debtor of its plans and efforts to further reduce the arrearage by improving its operations and securing new contracts so that it can recommence paying full rent to the Debtor.  Meanwhile, the Debtor has commenced active marketing of RiverHawk's leased space in order to find a replacement tenant or a buyer for the space in the event that RiverHawk cannot catch up on its arrearages and pay its normal rent going forward.

 Recently, the Debtor has increased its occupancy under new leases that will result in increased gross monthly revenue of approximately $21,000. With these new tenants, the Property is now approximately 60% leased.

## II.    Location of Debtor's Operations and Whether Leased or Owned

The Property is located in Hillsborough County, Florida and is owned by the Debtor.

### III.     Reasons for Filing Chapter 11

The chapter 11 filing is necessary to allow the Debtor to restructure and pay its debt obligations, to create a vehicle for the orderly infusion of additional funds to support the Debtor's operations and its debt service, and to allow the Debtor to reject burdensome executory contracts.

Unfortunately, when RiverHawk ceased making the full monthly rent payments, the Debtor began to experience cash flow problems that made it difficult to pay the Lender the monthly mortgage payments.  As discussed above, RiverHawk is actively taking steps to cure the rent arrearage of approximately $1.5 million.   Moreover, the Debtor is actively marketing RiverHawk's space with the hope of finding a replacement tenant or a buyer for the space, although finding a replacement tenant may take some time.

In February 2014, the Lender declared a default and accelerated the debt.  On February 13, 2014, the Lender filed a complaint against some of the guarantors of the debt, alleging a default under the guaranty agreements.  The Lender has not filed a foreclosure action against the Debtor, choosing instead to ignore its collateral.  The defendant-guarantors in that action, however, have filed a third party complaint against the Debtor under theories of indemnification and subrogation.  The Debtor has no ultimate defenses to the merits of that third-party action, so it is likely that one or more judgments will be entered against the Debtor absent a chapter 11 filing if the Investors make payments under the guarantees to Wells Fargo.

As part of its acquisition of the Property from Rattlesnake Point, Ltd. ("**Rattlesnake**") in two phases in 2004 and 2005, the Debtor assumed the obligations of Rattlesnake under an executory contract dated July 10, 1996 (the "**Port Agreement**"), that Rattlesnake had entered into with Ghandy View Realty, Inc. ("**Ghandy**").   Chemical Formulators, Inc. ("**CFI**") is

4

presently using Ghandy's rights under the Port Agreement.  The Port Agreement purports to grant to Ghandy and its successors and assigns a contractual right to use a port facility located on a portion of the Property to dock vessels and to off-load or on-load various hazardous chemicals to a pipeline which crosses the Property.  The pipeline runs to a chlorine manufacturing and distribution plant owned by Ghandy and operated by CFI.  The Debtor has ongoing obligations under the Port Agreement, including the obligation to make certain repairs to the waterfront area impacted by the Port Agreement.

The Port Agreement contains no express provision that permits the Debtor to terminate it without default by Ghandy, nor does it ever expire pursuant to its own terms.  Other parties to the Port Agreement assert that the Debtor can only terminate the Port Agreement if Ghandy elects to terminate it or defaults in its obligations.  The existence of the Port Agreement may adversely impact the Debtor's ability to obtain residential zoning for the Property or to use the Property for residential purposes.   Accordingly, in 2011, the Debtor filed an action in state court in Hillsborough County, seeking, among other things, a declaration that the Port Agreement and its related easements are void because, *inter alia*, they constitute an unreasonable restraint on alienation.  The state court denied a motion to dismiss by Ghandy and CFI and that action is currently pending, although no trial is scheduled.  The Debtor has been represented in that action by the Trenam Kemker law firm.

It is the Debtor's contention that the Port Agreement is an executory contract that is subject to Section 365 of the Bankruptcy Code and that the Debtor can reject it in a prudent exercise of its business judgment.  The Debtor may seek such relief in this bankruptcy case.

 With the filing of the Chapter 11 Petition, the Debtor believes that the existence of numerous Investors (who are also guarantors) will aid the Debtor in achieving a successful

reorganization.  In a collective proceeding like this chapter 11 case, all parties are before a single tribunal that can adjudicate all of their rights and adjust the claims and interests of creditors and equity holders alike while creating a judicially supervised environment that can provide protection to parties willing to infuse cash.  As can be seen from the third party action, failure to resolve this matter in Chapter 11 may result in some, but not all guarantors, paying amounts to the Lender and then proceeding against the Debtor by levy, garnishment or otherwise to collect an indemnification or subrogation judgment.  The support of the Investors is evidenced by their agreement to fund up to $1 million under a revolving line of credit secured by a junior mortgage on the Property.  The sum of $147,028.00 has already been advanced to the Debtor under this line of credit.

The Debtor has no viable option other than to file a Chapter 11 petition in an effort to preserve the value of the Property through a restructuring of the debt for the benefit of all creditors.  This Chapter 11 case seeks to restructure the debt owed to the Lender and to pay that debt in full with appropriate interest.  The Debtor believes that the appraisals undertaken by Wells Fargo reflect substantial equity in the Property, and the Debtor is issuing discovery requests to obtain those appraisals and other estimates of value.  The Debtor will in its plan of reorganization attempt to eliminate technical, non-monetary defaults and modify loan covenants. The Debtor's plan will provide for an extension of the maturity date of the Loans with the Lender and the payment of an interest rate in accordance with *Till*.  The existing guarantees will remain in place as to the restructured loan terms, with actions against the guarantors being stayed pursuant to, *inter alia*, *In re Shaw Aero Devices, Inc.*, 283 B.R. 349 (Bankr. M.D.Fla. 2002)(Paskay, J.), and *In re J.C. Householder Land Trust 1,* 502 B.R. 602 (Bankr. M.D.Fla. 2013)(Williamson, J.).   The Debtor also continues to explore a sale of all or a part of the

Property with the assistance of a real estate broker.  Moreover, as discussed above, the Debtor may seek to reject the Port Agreement under Section 365 of the Bankruptcy Code, which may create enhanced opportunities for the Debtor to obtain refinancing to take out the Wells Fargo debt.

In order to help facilitate the reorganization, the Investors and guarantors of the debt to the Lender have agreed to provide debtor-in-possession financing, as well as exit financing, necessary to fund a plan upon confirmation, in exchange for a matching injunction against collection efforts by the Lender as long as the Debtor is current on its plan payments.  The financial commitments from the Investors will help the Debtor to stabilize its operations pending either the resumption of regular lease payments by RiverHawk, the re-leasing of the RiverHawk space, or a sale or refinancing of all or part of the Property.

The filing of this case is necessary to preserve the substantial equity in the Property and is in the best interests of all creditors.  The Lender will be paid in full under the plan.

IV.    **List of Officers and Directors and Their Salaries and Benefits at Time of Filing and During the One Year Prior to Filing**

The membership interests are set forth on **Exhibit A** attached hereto.  The managers of the Debtor are Robert T. Curtis, William P. Curtis, and Bing Kearney.  Islandmanagement, L.L.C., a management company owned by Robert Curtis and William Curtis, provides management services to the Debtor in exchange for a management fee of $7,350.00 per month. The Debtor will be filing a motion to approve this arrangement.   In addition, the Debtor leases its employees from Bayshore Grand, Ltd., L.L.L.P. ("**Bayshore Grand**"), which is owned by Robert Curtis and William Curtis.  The Debtor reimburses Bayshore Grand for the cost of the employees but does not pay to Bayshore Grand any fee or other markup.  The managers do not receive any compensation from Islandmanagement, L.L.C. or Bayshore Grand.  Further, the

Debtor pays a management fee of $1,000.00 per month to ED Properties, LLC for services relating to marketing and tenant relations.  Dan Fields, an Investor, is an owner of ED Properties, LLC.

No other compensation is received by the managers.

### V.  Debtor's Annual Gross Revenues

The Debtor's gross revenues for the year ending December 31, 2014 were $1,849,130.71.

### VI.    Amounts Owed to Various Classes of Creditors

**Secured Claims:**

On or about June 4, 2004, the Lender made a loan to the Debtor in the principal amount of $7,000,000, evidenced by a promissory note, (as subsequently amended, "**Note One**") given by Debtor in favor of Lender.  The indebtedness under Note One is secured by that certain Mortgage and Security Agreement dated as of June 1, 2004.  As of the Petition Date, the balance under Note One is approximately $6,784,884.76.

In addition, on or about June 30, 2005, the Lender made a loan to the Debtor in the principal amount of $8,500,000, evidenced by a promissory note, (as subsequently amended, "**Note Two**") given by Debtor in favor of Lender.  The indebtedness under Note Two is secured by that certain Mortgage and Security Agreement dated as of June 30, 2005. As of the Petition Date, the balance under Note Two is approximately $7,981,931.21.  The Lender asserts that Note One and Note Two are secured by first liens on the Property and are cross-collateralized.

In addition, as alluded to above, prior to the Petition Date, on March 25, 2015, the Debtor executed in favor of Viper Lending, LLC, as agent for the Investors, the following documents (collectively, the "**Guarantor Loan Documents**"): (i) that certain Revolving Line of Credit Promissory Note, evidencing a line of credit with a maximum availability of $1 million; and (ii)

that certain Mortgage, Security Agreement, Assignment of Rents and Fixture Filing, pursuant to which Debtor granted to Viper Lending, LLC, as agent for the Investors, a junior lien on all assets of the Debtor to secure the indebtedness under the Guarantor Loan Documents.  Pursuant to the Guarantor Loan Documents, each Investor/guarantor is obligated to contribute pro rata to the Debtor's funding requests, subject to the terms and conditions of the Guarantor Loan Documents, based on each Investor's percentage of ownership interest in the Debtor.   Prior to the Petition Date, advances in the aggregate amount of $147,028.00 were made by the Investors on a pro rata basis to fund the prepetition retainers for professionals and the closing costs for the closing of the facility.

In addition, on December 27, 2012, David Henderson made two separate secured loans to the Debtor:  one in the amount of $15,874.52, secured by the Debtor's 2011 Toyota Tacoma; and a separate second loan in the amount of $5,357.92, secured by the Debtor's 2011 Model X Riding Lawn Mower.   As of the Petition Date, David Henderson is owed approximately $14,271.71 on the loan secured by the Tacoma, and is owed approximately $4,816.91 on the loan secured by the riding lawn mower.

**Priority Claims:**

There were no priority claims owed as of the Petition Date.

**Unsecured Claims:**

The Debtor owes modest amounts to unsecured trade creditors.  As noted above, a number of guarantors have asserted claims for indemnity against the Debtor.

### VII.    General Description and Approximate Value of the Debtor's Current and Fixed Assets

The Debtor's assets consist of the Property and related leasehold interests.

### VIII.    Number of Employees and Amount of Wages Owed as of Petition Date

The Debtor leases its employees from Bayshore Grand, a company that is owned by Robert Curtis and William Curtis.  As discussed above, the Debtor reimburses Bayshore Grand for the cost of the employees but does not pay to Bayshore Grand any fee or other markup.

### IX.    Status of Debtor's Payroll and Sales Tax Obligations

The Debtor owes no amounts for payroll or sales taxes.

### X.    Anticipated Emergency Relief Within 14 Days of Petition Date

The Debtor intends to file the following pleading requesting emergency relief: Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to Sections 105(a), 361, 363, 541 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure.  The Debtor also expects to file its plan and disclosure statement, a complaint seeking injunctive relief against Wells Fargo, employment applications, and other papers within the first two weeks.

### XI.    Strategic Objectives

The Debtor has filed this case for the purpose of restructuring its debts for the benefit of all creditors.

WHEREFORE, the Debtor respectfully submits this as its Case Management Summary.

*/s/  Edward J. Peterson, III*
Harley E. Riedel (FBN 183628)
Edward J. Peterson, III (FBN 0014612)
Stichter Riedel Blain & Prosser, P.A.
110 East Madison Street, Suite 200
Tampa, Florida   33602
(813) 229-0144 – Phone
(813) 229-1811 – Fax
hriedel@srbp.com
epeterson@srbp.com
Attorneys for Debtor

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the Chapter 11 Case Management Summary has been furnished on this 1st day of April, 2015 by the Court's CM/ECF electronic mail system to the United States Trustee.

*/s/  Edward J. Peterson, III*
Edward J. Peterson, III

# EXHIBIT A

## LIST OF EQUITY SECURITY HOLDERS

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| **A.R. Savage & Son, LLC**<br>**202 S. Rome Ave., #200**<br>**Tampa, FL 33606** | | **1%** | |
| **Cornerstone Homes & Design, Inc.**<br>**10032 Waterworks Lane**<br>**Riverview, FL 33578** | | **1%** | |
| **Curtis 2013, L.L.C.**<br>**3333 W. Kennedy Blvd., Suite 206**<br>**Tampa, FL 33609** | | **10%** | |
| **Dan W. Fields III**<br>**4522 W. Watrous Avenue**<br>**Tampa, FL 33629** | | **2%** | |
| **David G. Shell**<br>**828 S. Bayside Drive**<br>**Tampa, FL 33609** | | **4%** | |
| **Guide Capital, Ltd.**<br>**1700 South MacDill Avenue, Suite 220**<br>**Tampa, FL 33629** | | **8%** | |
| **Islandmanagement, L.L.C.**<br>**3333 W. Kennedy Blvd., #206**<br>**Tampa, FL 33609** | | **20%** | |
| **James K. Murray III**<br>**2008 Irrevocable Trust**<br>**1700 South MacDill Avenue, Suite 220**<br>**Tampa, FL 33629** | | **8%** | |
| **Lawrence J. Dickson**<br>**3333 W. Kennedy Blvd., Suite 206**<br>**Tampa, FL 33609** | | **10%** | |
| **Malcolm C. Harris**<br>**3621 S. Beach Dr.**<br>**Tampa, FL 33629** | | **0.6%** | |
| **Mark J. Rubio**<br>**4910 Yacht Club Drive**<br>**Tampa, FL 33616** | | **2%** | |
| **Michael L. Abdoney**<br>**4014 W. Estrella St.**<br>**Tampa, FL 33629** | | **2%** | |
| **Shinnston Enterprises, Ltd.**<br>**1700 South MacDill Avenue, Suite 220**<br>**Tampa, FL 33629** | | **8%** | |

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| **Tyson Avenue, LLC**<br>**9625 Wes Kearney Way**<br>**Riverview, FL 33569** | | **10%** | |
| **Whitehall Partners, Ltd.**<br>**1700 South MacDill Avenue, Suite 220**<br>**Tampa, FL 33629** | | **8%** | |
| **WRB Enterprises, Inc.**<br>**1414 Swann Avenue, Suite 201**<br>**Tampa, FL 33606** | | **5.4%** | |