UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                                          Chapter 11

VIPER VENTURES, LLC,                                           Case No. 8:15-bk-3404-CPM

      Debtor.
_____/                      *Emergency Hearing Requested*

**DEBTOR'S EMERGENCY MOTION FOR ENTRY
OF INTERIM AND FINAL ORDERS AUTHORIZING
USE OF CASH COLLATERAL AND GRANTING
REPLACEMENT LIENS PURSUANT TO SECTIONS 105(a),
361, 363, 541 AND 552 OF THE BANKRUPTCY CODE AND RULE
4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

---

**STATEMENT OF RELIEF REQUESTED**

The Debtor seeks authority to use cash collateral to fund its operating expenses and the costs of administering this Chapter 11 case in accordance with a proposed budget attached hereto and to provide replacement liens as described below as adequate protection for the interests in the cash collateral. The Debtor believes that the lender listed herein may assert a valid and perfected security interest in the cash collateral. As adequate protection, the Debtor proposes to grant to the lender a replacement lien to the same extent, validity, and priority as the security interests held by the lender as of the Petition Date.

---

VIPER VENTURES, LLC (the "**Debtor**"), by and through its undersigned attorneys, files its Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to Sections 105(a), 361, 363, 541 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Motion**") and requests the entry of interim and final orders approving the Debtor's use of cash collateral. In support of the Motion, the Debtor respectfully represents as follows:

## Background

1. On April 1, 2015 (the "**Petition Date**"), the Debtor filed for protection under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

2. The Debtor is a Florida limited liability company that owns 31 acres of waterfront land on Rattlesnake Point just south of Gandy Boulevard in Tampa, Florida (the "**Property**").

3. For a more detailed description of the Debtor's background and the reasons for the bankruptcy filing, please see the description in the Case Management Summary.

## Jurisdiction and Venue

4. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§157 and 1334.

5. The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

6. The statutory predicates for the relief requested herein are Sections 361 and 363 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

## Summary of Relief Requested and Summary of Prepetition Secured Indebtedness

7. The Debtor acquired the Property on June 4, 2004. Funding was provided by two loans (the "**Loans**") from Wachovia Bank, N.A., as predecessor in interest to Wells Fargo Bank, N.A. (the "**Lender**"), and by investments from sixteen different individuals or entities (the "**Guarantors**") who hold equity positions ranging from as much as 20 % to as little as 0.6%. Each of the Guarantors executed documents pursuant to which they guaranteed the repayment of 175% of their share of the Loans.

8. On or about June 4, 2004, the Lender made a loan to the Debtor in the principal amount of $7,000,000, evidenced by a promissory note, (as subsequently amended, "**Loan**

**One**") given by Debtor in favor of Lender. The indebtedness under Loan One is secured by that certain Mortgage and Security Agreement dated as of June 1, 2004, as well as that certain Assignment of Rents and Leases, dated June 1, 2004. As of the Petition Date, the balance under Loan One is approximately $6,784,884.76.

9. In addition, on or about June 30, 2005, the Lender made a loan to the Debtor in the principal amount of $8,500,000, evidenced by a promissory note, given by Debtor in favor of Lender ("**Loan Two**"). The indebtedness under Loan Two is secured by that certain Mortgage and Security Agreement dated as of June 30, 2005, as well as that certain Assignment of Rents and Leases, dated June 30, 2005. As of the Petition Date, the balance under Loan Two is approximately $7,981,931.21. The Lender asserts that the Loans are cross-collateralized and cross-defaulted.

10. In addition, prior to the Petition Date, on March 25, 2015, the Debtor executed in favor of Viper Lending, LLC ("**Viper Lending**"), as agent for the Guarantors, the following documents (collectively, the "**Guarantor Loan Documents**"): (i) that certain Revolving Line of Credit Promissory Note, evidencing a line of credit with a maximum availability of $1 million; and (ii) that certain Mortgage, Security Agreement, Assignment of Rents and Fixture Filing, pursuant to which Debtor granted to Viper Lending, as agent for the Guarantors, a junior lien on all assets of the Debtor to secure the indebtedness under the Guarantor Loan Documents. Pursuant to the Guarantor Loan Documents, each Guarantor is obligated to contribute *pro rata* to the Debtor's funding requests, subject to the terms and conditions of the Guarantor Loan Documents, based on each Guarantor's percentage of ownership interest in the Debtor. Prior to the Petition Date, advances in the aggregate amount of $147,028.00 were made by the

Guarantors on a *pro rata* basis to fund the prepetition retainers for professionals and the closing costs for the closing of the facility.

11. As set forth above, the Debtor purported to grant to the Lender a lien on its real property, as well as rents and accounts receivable. In addition, the Debtor granted to Viper Lending, as agent for the Guarantors, a junior lien on the Property, as well as rents. Accordingly, the Lender and Viper Lending (as agent for the Guarantors) may assert they have a lien on the Debtor's rents and accounts receivable and that they therefore have an interest in the Debtor's cash collateral within the meaning of 11 U.S.C. § 363(a) (the "**Cash Collateral**").

12. The Debtor intends to use the Cash Collateral in the continued operation of its business and in accordance with the budget (the "**Budget**") attached as **Exhibit A** and by reference incorporated herein.

13. Accordingly, the Debtor seeks the entry of an interim order authorizing the use of Cash Collateral (the "**Interim Order**") to avoid immediate and irreparable harm to the estate pending a final hearing and the entry of a final order.

14. The significant provisions of the Interim Order are as follows:[1]

   (a) <u>Interim Relief</u>. The Order shall be granted on an interim basis, pending a final hearing on the Motion.

   (b) <u>Budget</u>. The Debtor's use of Cash Collateral will be materially consistent with the Budget. The Budget initially covers the four week period beginning April 1, 2015 through April 30, 2015 - Interim Order at ¶ 2; and

   (c) <u>Adequate Protection</u>. The following shall constitute good and sufficient adequate protection to the Lender and Viper Lending for the Debtor's use of the Cash Collateral:

---

[1] The summary of the Interim Order is provided for the convenience of the Court and other parties in interest. To the extent there are conflicts between this summary and the Interim Order annexed hereto as <u>Exhibit B</u>, the terms of the Interim Order shall govern. Capitalized terms used in the summary but not otherwise defined herein shall have the meaning(s) set forth in the Interim Order.

      i.      <u>Adequate Protection Liens</u>. The Debtor shall provide the Lender and Viper Lending with replacement liens identical in extent, validity and priority as such liens existed on the Petition Date – Interim Order at ¶ 4; and

      ii.      <u>Reporting Requirements</u>. The Debtor shall provide on a weekly basis profit and loss statements on a cash basis to counsel for the Lender and Viper Lending – Interim Order at ¶ 3.

(d)    <u>Event of Default</u>:  It shall be an event of default if the Debtor exceeds the 15% variance (the "**Variance**") on an aggregate basis provided for in the Interim Order; provided, however, in the event of a default, the Debtor's authority to use Cash Collateral shall continue until the Lender or Viper Lending obtain an order by appropriate motion after notice and a hearing requiring the Debtor to cease using Cash Collateral. Notwithstanding the foregoing, subject to the provisions of paragraph ten (10) of the Interim Order, expenditures in excess of the Variance or not on the Budget will not be deemed to be unauthorized use of Cash Collateral, unless the recipient cannot establish that the expense would be entitled to administrative expense priority if the recipient had extended credit for the expenditure--Interim Order at ¶ 2, 10.

15.    At the initial hearing on this Motion, the Debtor will seek to use Cash Collateral in the amount of approximately $30,000.00 or such other amount as is necessary to avoid immediate and irreparable harm on an interim basis pending entry of a final order on this Motion.

## **Relief Requested and Legal Authority for the Relief Requested**

16.    The Debtor believes that the Lender and Viper Lending, as agent for the Guarantors, will assert a lien on the Cash Collateral.  The Debtor reserves its rights to contest the validity and priority of the liens. The Debtor files this Motion and seeks entry of an order authorizing the use of Cash Collateral generally and for purposes which include the following:

(a)    care, maintenance, and preservation of the Debtor's assets;

(b)    payment of necessary suppliers, utilities, and other business expenses;

    (c)  other payments necessary to sustain continued business operations; and

    (d)  costs of administration in this Chapter 11 case.

17. The Debtor requests authority to use Cash Collateral immediately to pay the operating expenses set forth on the Budget attached hereto as **Exhibit A** and incorporated herein by reference, which are necessary to continue the operation of the Debtor's business, to maximize the return on its assets, and to otherwise avoid irreparable harm and injury to its business and its estate.

18. There is insufficient time for a final evidentiary hearing, as required by Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure, to be held before the Debtor must arguably use Cash Collateral.  If this Motion is not considered on an expedited basis and if the Debtor is denied the ability to immediately use Cash Collateral, there will be direct and immediate harm to the continuing operation of the Debtor's business.  In order to continue its business activity in an effort to achieve successful reorganization, the Debtor needs to use Cash Collateral in its ordinary business operations.  The inability of the Debtor to meet its ordinary business expenses will require the Debtor to discontinue normal operations which will result in irreparable injury to the Debtor and its chances for reorganization.  Any such discontinuation would also adversely impact upon the value of any secured party's collateral.  Indeed, it is in the best interests of all creditors and the Debtor that the Debtor uses its Cash Collateral since such usage will preserve the value of any secured party's collateral.  Accordingly, Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure authorizes this Court to hold an immediate preliminary hearing on this Motion.

19. "Cash Collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest." 11 U.S.C. § 363(a). Pursuant to section 363(c)(2) of the Bankruptcy Code, the Court may authorize the Debtor to use Cash Collateral as long as the secured creditor consents or its interest is adequately protected. *See, e.g., In re Mellor,* 734 F.2d 1396, 1400 (9th Cir. 1984); *see also In re McCormick,* 354 B.R. 246, 251 (Bankr. C.D. Ill. 2006) (to use the cash collateral of a secured creditor, the debtor must have the consent of the secured creditor or must establish to the court that the secured creditor's interest in the cash collateral is adequately protected).

20. In the event that the Lender or Viper Lending (as agent for the Guarantors) assert a lien on Cash Collateral, in exchange for the Debtor's ability to use Cash Collateral in the operation of its business, the Debtor proposes to grant, as adequate protection, to the Lender and Viper Lending a replacement lien equal in extent, validity, and priority to the liens held by the Lender and Viper Lending as of the Petition Date. The Debtor asserts that any interests of the Lender and Viper Lending will be adequately protected by the replacement liens, the budgetary constraints discussed above, and the reporting requirements discussed above.

21. If allowed to use Cash Collateral, the Debtor believes that it can stabilize its business operations and maintain going concern value. Otherwise, the Debtor's business operations will cease and its assets will have only liquidation value.

### Basis for Emergency Relief

22. The facts previously set out herein clearly justify an immediate hearing on this Motion. If the Debtor cannot utilize Cash Collateral, the Debtor will be unable to pay operating expenses necessary to continue the operation of the Debtor's business and will be irreparably

harmed.  The Debtor has narrowly tailored the relief requested on an emergency basis in order to allow it to survive pending a final Cash Collateral hearing, as required by Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure.

WHEREFORE, the Debtor respectfully requests that this Court:  (1) enter the Interim Order granting the instant Motion and authorizing the interim use of Cash Collateral, the proposed form of which is attached as **Exhibit B**, (2) schedule a preliminary hearing on the Motion at the earliest possible time, (3) schedule a final cash collateral hearing in accordance with Bankruptcy Rule 4001(b)(2), (4) authorize the Debtor to use the Cash Collateral in the operation of its business, and (5) grant such other and further relief as may be just and proper.

*/s/ Edward J. Peterson, III*
Harley E. Riedel (FBN 183628)
Edward J. Peterson, III (FBN 014612)
Stichter Riedel Blain & Prosser, P.A.
110 East Madison Street, Suite 200
Tampa, Florida   33602
(813) 229-0144 – Phone
(813) 229-1811 – Fax
hriedel@srbp.com
epeterson@srbp.com
Attorneys for Debtor

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct of the foregoing ***Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to Sections 105(a), 361, 363, 541 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure*** has been furnished on this 1st day of April, 2015, by either the Court's CM/ECF Noticing System, E-Mail or U.S. Mail to:

Office of the United States Trustee
20 Largest Unsecured Creditors attached

Janelle A. Weber, Esquire
jweber@shutts.com

Tirso M. Carreja, Jr., Esquire
tcarreja@shutts.com

      */s/ Edward J. Peterson, III*
      Edward J. Peterson, III

Michael L. Abdoney
4014 W. Estrella St.
Tampa, FL 33629

Stephen H. Bronstein
1311 S. Apollo Beach Blvd., Suite A
Apollo Beach, FL 33572

Lawrence J. Dickson
3333 W. Kennedy Blvd., Suite 206
Tampa, FL 33609

Fields III, Dan W.
4522 W. Watrous Ave.
Tampa, FL 33629

Guide Capital, Ltd.
1700 South MacDill Ave., Suite 220
Tampa, FL 33629

Malcolm C. Harris
3621 S. Beach Dr.
Tampa, FL 33629

James K. Murray III
1700 South MacDill Ave., Suite 220
Tampa, FL 33629

James K. Murray, Jr.
1700 South MacDill Ave., Suite 220
Tampa, FL 33629

Michael S. Murray
1700 South MacDill Ave., Suite 220
Tampa, FL 33629

Mark J. Rubio
4910 Yacht Club Dr.
Tampa, FL 33616

Arthur R. Savage
202 S. Rome Ave., #200
Tampa, FL 33606

David G. Shell
828 S. Bayside Dr.
Tampa, FL 33609

Stearns Weaver Miller Weissler
Alhadeff & Sitterson, P.A.
401 E. Jackson St., #2200
Tampa, FL 33602-5236

Trenam, Kemker, Scharf, Barkin, Frye,
O'Neil & Mullis, P.A.
P.O. Box 1072
Tampa, FL 33601

WRB Enterprises, Inc.
1414 Swann Ave., Suite 201
Tampa, FL 33606

# EXHIBIT A

# Viper Ventures, LLC
## April 2015 Budget

|  | **Apr 15** |
|---|---:|
|  | Forecast |
| **Income** |  |
|   **Rental Income bef sales tax** |  |
|     **CAM** | 707.71 |
|     **Faciltiy Rent** | 45,621.67 |
|     **Port Charges** | 5,519.57 |
|     **Storage / Land Rental** | 10,464.99 |
|     **Tenant Property Ins.** | 3,730.05 |
|     **Tenant Property Tax** | 8,113.85 |
|  | 74,157.84 |
|  |  |
|   **Miscellaneous Income** |  |
|     **Sales Tax Allowance** | 30.00 |
|  | 30.00 |
|  |  |
|   **Expense Reimbursements** |  |
|     **Tenant Electricity Reimb.** | 2,000.00 |
|     **Tenant Water/Sewer Reimb.** | 3,656.06 |
|  | 5,656.06 |
|  |  |
| **Total Income** | 79,843.90 |

# Viper Ventures, LLC
## April 2015 Budget

|  | Apr 15 |
|---|---:|
|  | Forecast |
| **Expense** |  |
| **Administration Expense** |  |
| **Accounting Fees** | 0.00 |
| **Bank Fees** | 25.54 |
| **Consulting Fee** | 1,000.00 * |
| **Dues & Subscriptions** | 0.00 |
| **Insurance - General & Bond** | 10,813.28 |
| **Legal Fees** | 0.00 |
| **Licenses & Permits** | 0.00 |
| **Luncheons & Meetings** | 0.00 |
| **Management Fee** | 7,350.00 * |
| **Office - Miscellaneous** | 0.00 |
| **Office - Supplies** | 15.00 |
| **Staff Leasing** | 8,250.00 |
| **Postage** | 0.00 |
| **Security/Fire Alarm Monitoring** | 95.79 |
| **Shipping & Delivery** | 0.00 |
| **Submerged Land Lease** | 0.00 |
| **Telephone - Mobile** | 85.00 |
|  | 27,634.61 |
| **Auto Expense** |  |
| **Auto Fuel** | 110.00 |
| **Auto Insurance** | 0.00 |
| **Auto Repairs** | 25.00 |
| **Auto Registration** | 0.00 |
|  | 135.00 |

**\* The Debtor will be filing a separate motion for authority to pay such fee.**

# Viper Ventures, LLC
## April 2015 Budget

|  | **Apr 15** |
|---|---:|
|  | Forecast |
| **Repairs & Maintenance** |  |
|   **Electrical** | 0.00 |
|   **Fire Alarms, Sprinkers & Exting** | 0.00 |
|   **Landscape / Grounds Upkeep** | 50.00 |
|   **Miscellaneous** | 0.00 |
|   **Plumbing** | 0.00 |
|   **Repairs** | 800.00 |
|   **Supplies** | 30.00 |
|  | 880.00 |
| **Utilities** |  |
|   **Electricity** | 2,884.91 |
|   **Water & Sewer** | 4,281.82 |
|  | 7,166.73 |
|  |  |
| **Total Expense** | 35,816.34 |

# **EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                          Chapter 11

VIPER VENTURES, LLC,                             Case No. 8:15-bk-

      Debtor.
_____/

**INTERIM ORDER GRANTING
DEBTOR'S EMERGENCY MOTION FOR ENTRY
OF INTERIM AND FINAL ORDERS AUTHORIZING
USE OF CASH COLLATERAL AND GRANTING
REPLACEMENT LIENS PURSUANT TO SECTIONS 105(a),
361, 363, 541 AND 552 OF THE BANKRUPTCY CODE AND RULE
<u>4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE[1]</u>**

THIS CASE came on for hearing on_____ upon the Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to Sections 105(a), 361, 363, 541 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Motion**") (Doc. No. ___). The Motion seeks the entry of interim and final orders authorizing the use of "Cash Collateral" as defined in Section 363(a) of the Bankruptcy Code. The Court, having reviewed the Motion and having heard the argument and proffers of counsel, finds that the Motion should be granted on an interim basis pending a final hearing. Accordingly, for the reasons stated orally and recorded in open Court, which shall constitute the decision of the Court, it is

**ORDERED** that:

1.      The Motion is granted on an interim basis pending a final hearing to be conducted by the Court on _____.

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meaning ascribed to them in the Motion.

2.The Debtor is authorized to use Cash Collateral (as that term is defined in Section 363(a) of the Bankruptcy Code) including, without limitation, cash, deposit accounts, accounts receivable, and rental revenue in accordance with the budget (the "**Budget**"), a copy of which is attached hereto as **Exhibit A**, so long as the aggregate of all expenses for each week do not exceed the amount in the Budget by more than fifteen percent (15%) for any such week on a cumulative basis (the "**Variance**").  Notwithstanding the foregoing, subject to the provisions of paragraph ten of this Order, expenditures in excess of the Variance or not on the Budget will not be deemed to be unauthorized use of Cash Collateral, unless the recipient cannot establish that the expense would be entitled to administrative expense priority if the recipient had extended credit for the expenditure.

3.Beginning the week of April 6, 2015, the Debtor shall provide on a weekly basis profit and loss statements on a cash basis (that include a comparison of budgeted numbers to actual numbers) to counsel for the Lender and Viper Lending by email by 5:00 p.m. (EST) on Friday of the following week.

4.The Lender and Viper Lending are granted as adequate protection post-petition replacement liens against the Debtor's Cash Collateral to the same extent, validity, and priority as existed as of the Petition Date without the need to file or execute any document as may otherwise be required under applicable nonbankruptcy law.

5.The Debtor shall maintain insurance coverage for the Property in accordance with the obligations under the loan and security documents.

6.This Order is not and shall not be construed as determinative as to whether or not any creditor has a valid lien on any property of the Debtor or its estate.  This Order is not and shall not be construed as determinative as to the extent or amount of any secured claim associated with any such lien.

7. This Order is without prejudice to the Debtor's right to challenge the extent, validity, or priority of any lien or claim of any creditor, and is likewise without prejudice to the right of any creditor to seek modified adequate protection or restrictions on use of cash collateral and nothing contained in this Order shall be deemed to constitute a waiver of any party's rights.

8. The provisions of this Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court.

9. This Order is without prejudice to the Debtor's rights to seek authority by separate motion to pay monies in excess of the amounts set forth in the Budget.

10. It shall be an event of default if the Debtor exceeds the Variance without the prior written consent of counsel for the Lender and Viper Lending, which consent shall not be unreasonably withheld; provided, however, in the event of a default, the Debtor's authority to use Cash Collateral shall continue until the Lender or Viper Lending obtains an order by appropriate motion after notice and hearing requiring the Debtor to cease using Cash Collateral.

11. All persons and entities owing monies to the Debtor are authorized and directed to pay the monies to the Debtor, without setoff, which sums shall upon collection by the Debtor constitute Cash Collateral.

**DATED:** _____.

_____

United States Bankruptcy Judge

Attorney Edward J. Peterson, III is directed to serve a copy of this order on interested parties who are non-CM/ECF users and to file a proof of service within 3 days of entry of the order